E. E. CRUSOE, III, Trustee in Bankruptcy in the matter of McKinnon-Armstrong Motors, Inc., Plaintiff,

v.

ASSOCIATES DISCOUNT CORPORA-TION, an Indiana corporation, Defendant.

Civ. A. No. 446–T.

United States District Court, N. D. Florida, Tallahassee Division.

March 23, 1955.

Leo S. Foster, of firm of Caldwell, Parker, Foster & Wigginton, Tallahassee, Fla., for plaintiff.

Keen, O'Kelley & Spitz (H. O. Pemberton), Tallahassee, Fla., for defendant.

DE VANE, Chief Judge.

Under date of May 12, 1953 McKinnon-Armstrong Motors, Inc., filed a voluntary petition in bankruptcy in this court, and on May 14, 1953 was adjudged a bankrupt.

An order was entered May 15, 1953 setting May 30, 1953 as the date for the first meeting of creditors. At this meeting the creditors selected, and on June 2, 1953 the referee appointed plaintiff trustee in bankruptcy for the bankrupt. The referee, by order on that date, also appointed Leo S. Foster attorney for the trustee.

Long before bankruptcy the bankrupt had entered into a contract with defendant, under Florida Uniform Trust Receipt Law by which defendant financed all new and used automobiles purchased by the bankrupt. During the administration of the estate of the bankrupt the trustee became dissatisfied with a number of financial transactions between the bankrupt and defendant that had transpired within the four-month period prior to bankruptcy and reported to the court, briefly, some of these financial transactions he questioned. The court, thereupon, directed the trustee to seek the advice of his attorney and to bring suit against defendant if that appeared advisable. A suit was instituted in this case on January 29, 1954 and the matter subsequently came on for trial on the complaint and answer.

During the course of the trial it developed that defendant had not made available to the trustee certain of its records and the court promptly interrupted the trial, directed defendant to make these records available and directed the trustee to make a supplemental report of his findings to the court. This supplemental investigation resulted in the trustee finding several other trans-

actions he questioned, and, on January 28, 1955, an amendment to the complaint was filed, including these additional matters.

The case is now before the court upon the complaint, the amendment, answer of defendant to each and the evidence submitted to the court by both parties.

The issues in this case, while complicated to a degree, are not difficult to decide under the applicable law. The trustee failed to carry the burden of proof on all items sued upon and for brevity only those items where the court finds and holds plaintiff entitled to recover will be referred to in this memorandum decision. They will be discussed in the order they were submitted to the court.

■ 1. Under the floor-plan financing agreement, defendant required bankrupt to maintain, with it and for its benefit, a reserve for the protection of defendant in case of losses on any of its financial transactions with the bankrupt. Within the four-month period prior to bankrutpcy defendant required the bankrupt, by threats and intimidation, to execute, for defendant's use and benefit, an instrument assigning to defendant the earned and unearned reserves held by defendant in the amount of $2,803.23. In the same instrument the bankrupt was also required to deliver to defendant a truck, referred to in the hearings as the A. G. Arnold truck.

■ The evidence disclosed that bankrupt had sold to defendant a fictitious contract purporting to obligate A. G. Arnold to pay the bankrupt the supposedly selling price of the truck. Defendant took possession of the truck and sold it for $1,283 and applied the proceeds to the satisfaction of the fictitious contract held by it on the truck.

The court finds and holds that the instrument assigning the reserves in the sum of $2,803.23 and the proceeds realized from the truck in the amount of $1,283 is void as to unsecured creditor of bankrupt and the amounts so realized were improperly retained by de-

fendant. Plaintiff is entitled to a judgment against defendant for these items.

■ 2. On or about February 20, 1953, under like threats and intimidation, the bankrupt transferred to the defendant, out of the assets of the bankrupt's estate, $10,711.68, which transfer was made within the four-month period prior to the filing of the petition in bankruptcy.

The evidence disclosed that the bankrupt was insolvent at the time of the transfer and that defendant was well aware of that fact. However, only a part of this money was illegally applied by the defendant. Prior to February 20, 1953 the bankrupt had sold to defendant a fictitious contract supposedly executed by one Richard C. Galloway for $1,778.12. The Galloway contract, being fictitious, defendant had no right to apply any of the proceeds of the $10,711.68 towards the payment of this unsecured indebtedness of the bankrupt to defendant. The court, therefore, finds and holds that plaintiff is entitled to recover this amount from the defendant.

3. Defendant used $996.82 of the proceeds of the $10,711.68 payment to reimburse it for money collected by the bankrupt for defendant on certain contracts which had been sold by bankrupt to defendant. Of this amount $108.55 was applied towards the payment of a fictitious contract referred to in the evidence as the J. A. Massey contract. The defendant, therefore, had no valid or subsisting lien for said $108.55 and the plaintiff is entitled to recover this amount from defendant.

■ 4. On December 30, 1952 the bankrupt sold to defendant a fictitious contract in the amount of $1,040.24, referred to in the testimony as the Virgil V. Arnold contract. On or about February 24, 1953, when the defendant discovered the fictitious nature of this contract, it required the bankrupt to satisfy the same in full. Defendant held no valid or subsisting lien securing said $1,040.24 and plaintiff is entitled to recover the full amount paid defendant by bank-

rupt on account of this fictitious contract.

5. On March 13, 1953 defendant, acting in its own behalf and for its own benefit, took possession of four automobiles owned by bankrupt and sold them to Dean Motors, Inc., realizing therefor the sum of $8,209.19. Defendant held floor-plan trust receipts upon each of these automobiles. The trust receipts covering two of these automobiles were executed by J. R. Armstrong, who had been for some time President of the bankrupt corporation, but had disposed of his stock to the McKinnons and had resigned as President and Director of the corporation, and under date of February 19, 1953 Armstrong had notified defendant of his action in this respect.

The check for these automobiles was drawn by Dean Motors, Inc. in favor of McKinnon-Armstrong Motors, Inc. and Associates Discount Corporation. The check was delivered to defendant, who secured the endorsement of J. R. Armstrong thereon, and by it deposited in its own bank account. The question presented here is what the court should do about the two trust receipts executed by J. R. Armstrong as President of McKinnon-Armstrong Motors, Inc. and his improper endorsement of the check payable to McKinnon-Armstrong Motors, Inc. and Associates Discount Corporation for the four automobiles.

The court finds and holds that the trust receipts upon two of these automobiles were valid, having been executed by a proper officer of McKinnon-Armstrong Motors, Inc., but the court is of the opinion that financing companies must be held to a strict accountability in transactions with automobile companies financed by them, and in a court of bankruptcy the defendant is not entitled to a preference and a lien upon a transaction where it had proper notice that the party executing the lien had no authority to do so.

The court, therefore, holds that the two liens executed by Armstrong after he was no longer an officer of the bankrupt are void as against common creditors in bankruptcy and that plaintiff is entitled to recover from the defendant the sum of $4,083.15, the amount collected by defendant on the two void trust receipts. The remainder of the amount collected was properly applied by defendant.

6. On April 21, 1953 defendant took possession of three automobiles belonging to bankrupt and sold them to Wood Motor Company for the sum of $4,942.75. Defendant held trust receipts upon these three automobiles for the full amount received from Wood Motor Company.

One of these trust receipts is in the same category as the two void receipts referred to above and the court finds and holds that plaintiff is entitled to recover from defendant the sum of $1,414.34 applied by it to the satisfaction of the void trust receipt held by it upon one of the automobiles. The other two trust receipts the court finds were valid and the plaintiff has no claim for the amount used by defendant to satisfy those receipts.

7. On March 7, 1953 defendant took possession of and sold a vehicle owned by bankrupt to Mrs. E. C. Kendricks for $1,676.55. This automobile had been previously sold to a third party and repossessed by the bankrupt. Defendant, at the time, held a valid lien for the balance due on this automobile in the amount of $1,345.84. The selling price to Mrs. Kendricks was $330.71 in excess of the amount due defendant on its lien, but it declined to account to bankrupt for the $330.71. The court finds and holds that plaintiff is entitled to recover this amount.

8. On June 19, 1953, after the voluntary petition in bankruptcy had been filed herein and the trustee had been appointed and qualified, defendant removed from the assets of the bankrupt a motor vehicle owned by bankrupt and sold the same to Dean Motors, Inc. for the sum of $1,486.11. Defendant held a valid trust receipt against this automobile, but, under the law it had no

authority to take possession of the automobile after the trustee had been appointed in this case.

Its only remedy at the time was to file a claim for the amount of its preferred lien. This it failed to do within the time prescribed by law and it, therefore, lost its right to be considered a preferred creditor for the amount of its lien on this automobile.

 Clearly the high-handed action of defendant in this particular case was illegal and plaintiff is entitled to recover the proceeds received by defendant for the automobile in the amount of $1,486.-11.

9. On April 11, 1953 defendant removed from the assets of bankrupt a motor vehicle owned by bankrupt and transferred same to Vernon Regans and received therefor $1,414.34, converted same to its own use and refused to account to the bankrupt or to the trustee for the proceeds therefrom. Defendant held against this automobile an invalid trust receipt executed by J. R. Armstrong, as President of the bankrupt, on March 2, 1953; days after the defendant well knew that Armstrong was no longer an officer of the bankrupt and this transaction falls in the same category as similar transactions enumerated above.

The court, therefore, finds and holds that plaintiff is entitled to recover the amount of $1,414.34 from defendant, which was received and retained by it on account of this transaction.

10. On March 30, 1953 defendant took possession of and sold to Gainey & Parker Motor Company of Chipley, Florida, one 1951 Studebaker automobile for $975 and one 1951 Dodge automobile for $950, totalling $1,925. Defendant held valid trust receipts on these automobiles in the amount of $1,-810. It collected from the Gainey & Parker Motor Company the full proceeds for the sale of these automobiles, satisfied its trust receipts upon the same and retained the $115 excess, which it now claims the right to keep.

The court finds and holds that plaintiff is entitled to recover this amount from defendant.

All the items enumerated above total $15,856.79 and the court finds and holds that plaintiff is entitled to recover this amount from defendant.

An appropriate judgment will be entered herein in conformity with this memorandum decision.